PEOPLE v SCHNEFF

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—PRELIMINARY EXAMINATION—AP-
   PEAL AND ERROR.

   Trial court's partial reliance on testimony taken at the prelimi-
   nary examination to establish the factual basis for defendant's
   guilty plea was reversible error; decisions of the Michigan
   Supreme Court bar the use of the preliminary examination
   transcript as a means of establishing the factual basis of a
   guilty plea.

2. CRIMINAL LAW—STATUTES—PLEA OF GUILTY—PRELIMINARY EXAMI-
   NATION—APPEAL AND ERROR.

   A statute requires a trial court to derive the factual basis for a
   guilty plea directly from the defendant or through testimony
   developed at a full adversarial trial; trial judge erred in consid-
   ering the preliminary examination testimony when accepting
   defendant's guilty plea (MCLA 768.35).

3. CRIMINAL LAW—PLEA OF GUILTY—STATUTES—WAIVER.

   A statute places the "duty" on the trial court to insure that a
   plea of guilty is freely and knowingly proffered by the defend-
   ant; the procedures required in the plea taking process should
   be strictly complied with and may not be waived by the
   defendant (MCLA 768.35).

4. CRIMINAL LAW—PLEA OF GUILTY—TRIAL—REASONABLE DOUBT—
   WAIVER.

   A defendant expressly waives a trial on the merits and implicitly
   waives the obligation of the people to establish his guilt beyond
   a reasonable doubt when he proffers a plea of guilty.

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 21 Am Jur 2d, Criminal Law § 484 *et seq.*
  Admissibility of plea of guilty at preliminary hearing, 141 ALR
  1335.
[7, 8] 21 Am Jur 2d, Criminal Law §§ 540, 592, 614.

5. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—STATUTES—
   COURT RULES.

> To insure that a defendant is pleading to an offense which he has,
> in fact, committed, statute and court rule place a duty on the
> trial court to establish a factual basis for the guilty plea and
> this factual basis must "satisfy" the court that defendant is
> guilty of the elements necessary to support a conviction on the
> charged offense; if the trial court is satisfied that defendant has
> committed the crime, it may accept his plea; if the facts do not
> satisfy the court of the truth of the plea it is the court's duty to
> vacate the same, direct a plea of not guilty to be entered and
> order a trial of the issue thus formed (MCLA 768.35; GCR 1963,
> 785).

6. CRIMINAL LAW—CRUELTY TO CHILDREN—PLEA OF GUILTY.

> Acceptance of defendant's guilty plea is affirmed where at the
> guilty plea hearing defendant stated that he was the father of
> 27-day-old infants, that he kept them awake at card parties
> which would endanger their health and that he made insuffi-
> cient efforts to care for one of the infants who was ill and not
> eating two days prior to its death; on the record there were
> ample facts adduced to support a factual basis for the crime of
> "cruelty to children" as defined by statute (MCLA 750.136).

7. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—MAXIMUM SEN-
   TENCE—SUPPLEMENTAL BRIEF—APPEAL AND ERROR.

> Defendant is ineligible to have his minimum sentence reduced
> where he had ample opportunity to file a supplemental brief
> raising the issue that the minimum term of his sentence
> exceeded 2/3 of the maximum term and he failed to do so.

OPINION CONCURRING IN PART AND DISSENTING IN PART

LEVIN, J.

See headnotes 4–6.

8. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—MAXIMUM SEN-
   TENCE—SUPPLEMENTAL BRIEF—APPEAL AND ERROR.

> *Defendant should be eligible to have his minimum sentence
> reduced where he asked the Michigan Supreme Court to exer-
> cise its supervisory power and reduce his minimum sentence so
> that it does not exceed two-thirds of the maximum even though
> he had ample opportunity to file a supplemental brief raising
> the issue but failed to do so.*

Appeal from Court of Appeals, Division 2, Fitz-

gerald, P. J., and Quinn and Danhof, JJ., vacating
and remanding Monroe, James J. Kelley, Jr., J.
Submitted March 13, 1974. (No. 3 March Term
1974, Docket No. 54,543.) Decided June 25, 1974.
Rehearing denied August 2, 1974.

43 Mich App 413 affirmed in part and reversed
in part.

Gene E. Schneff was convicted, on his plea of
guilty, of cruelty to children. Defendant appealed
to the Court of Appeals. Vacated and remanded
with instructions. The people appeal. Affirmed in
part and reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *James J. Ros-
tash,* Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Norris J.
Thomas, Jr.),* for defendant on appeal.

SWAINSON, J. On June 18, 1971, defendant-appel-
lee Gene Edward Schneff pleaded guilty to a two
count information charging cruelty to children,
MCLA 750.136; MSA 28.331, arising out of the
deaths of his 27-day-old son and daughter. In
relevant part the following testimony was taken at
the guilty plea hearing:

"*The Court:* Is it your wish, Mr. Schneff, to plead
guilty to both counts, Count I and Count II?
"*Mr. Schneff:* Yes.
"*The Court:* Whose idea is it that you plead guilty?
"*Mr. Schneff:* It is mine.
"*The Court:* Will you tell us in your own words how
you were involved in the matters set forth in these
counts so as to make you think you are guilty of the
offense?
"*Mr. Sullivan (defendant's counsel):* Your Honor, may

I say something before we get into that, which I think has a direct bearing on this.

"The statute that Mr. Schneff is pleading guilty to reads as follows:

" 'Any parent or guardian or person under whose protection a child may be who cruelly or unlawfully punishes or willfully, unlawfully or negligently deprives the necessary food, clothing, or shelter; or willfully abandons a child under 16 years of age; or who habitually causes or permits the health of said child to be injured, his or her life to be endangered by exposure, want or other injury to his or her person—'

and the statute goes on to parts that I don't think are relevant to this case. I think it is Mr. Schneff's intention to plead guilty to negligently depriving necessary food, clothing or shelter. The statute contains many *ors*. As I understand it, if someone is guilty of any one of these provisions, he is guilty of the violation of this statute. It is not Mr. Schneff's intention to plead guilty to cruelly or unlawfully punishing these children. That is what I wish to say before going on.

"Do you agree with what I have said, Mr. Schneff?

"*Mr. Schneff:* Yes, I do.

"*The Court:* We have two identical counts except each names a different child.

"*Mr. Sullivan:* True.

"*The Court:* So there are two felony charges here.

"All right, will you tell us, Mr. Schneff, how you were involved in the matters which the Information set forth so as to make you believe you are guilty? Let's take Count I first.

"*Mr. Schneff:* Well, your Honor, of course I am the father of these children.

"*The Court:* Which children are these?

"*Mr. Schneff:* Timothy and Kimberly.

"*The Court:* All right.

"*Mr. Schneff:* It was my responsibility to see that they were properly, you know, taken to a doctor if something was wrong, which I failed to do when they appeared sick and this, my wife asked me to take them to a doctor. I did give some try, but not really what I

probably could have done. I allowed card parties—that was my idea, which I was warned against.

"*The Court:* Let's go back. Were these children both residing with you?

"*Mr. Schneff:* Yes, they were.

*  *  *

"*The Court:* The Information alleges from about December 10th to and including December 18th, 1970. Is that about the correct time?

"*Mr. Schneff:* Yes, it is.

"*The Court:* What was it that happened during that time?

"*Mr. Schneff:* Well, like I said, I invited card parties which extended to hours of the night, about 11:00 or 12:00, and kept the kids awake.

"*The Court:* Kept the children awake. All right.

"*Mr. Schneff:* Which would endanger their health. It was noisy. I, also, two days prior to the time, one of them came down sick which apparently I didn't take too seriously—

"*The Court: (interposing)* This was two days before this period started? Would this be around December 8th, 1970?

"*Mr. Schneff:* I am talking about 2 days prior to the 18th, which I should have had them taken to the doctor, which I didn't give sufficient try of getting them there.

"*The Court:* This was Timothy?

"*Mr. Schneff:* Yes.

"*The Court:* The other child, also?

"*Mr. Schneff:* Yes, it was.

"*The Court:* Both of them were sick?

"*Mr. Schneff:* Well, Tim was sick and Tim didn't appear sick.

"*The Court:* Was he actually sick?

"*Mr. Schneff:* Yes, he was.

"*The Court:* All right.

"*Mr. Schneff:* And I didn't get him there, so I feel that I am guilty of this.

"*The Court:* What happened?

"*Mr. Schneff:* On the night of the 18th I woke up in the morning—I was woken up by one of the case workers for the Social Service and I remembered—I didn't recall it until she got me up and we talked for a few minutes, about 2 or 3 minutes, and I recalled that the babies didn't cry all night and it worried me and when I went in I found them deceased.

"*The Court:* Found them what?

"*Mr. Schneff:* Dead.

"*The Court:* Both of them?

"*Mr. Schneff:* Yes.

"*The Court:* What did they die of?

"*Mr. Schneff:* Afterwards I found out it was pneumonia.

"*The Court:* And they had pneumonia for a period of time?

"*Mr. Schneff:* Not that I know of. I just knew one wasn't eating and was vomiting 2 days prior to the time.

"*The Court:* And what happened?

"*Mr. Schneff:* And I called—the woman ran up and called the police and ambulance and they came over and took pictures and then I was brought into court.

"*The Court:* You were present at the preliminary examination of this case?

"*Mr. Schneff:* Yes.

"*The Court:* In District Court?

"*Mr. Schneff:* Yes.

"*The Court:* Did you hear the testimony taken there?

"*Mr. Schneff:* Yes.

"*The Court:* As far as you are concerned, is it all true?

"*Mr. Schneff:* No.

"*The Court:* What part is not true?

"*Mr. Schneff:* The part of David Nickel where he said that he offered assistance to take me to the doctor to get the kids there. Well, this is wrong because his mother's car wasn't able to move. The transmission was out.

"*Mr. Sullivan:* His mother's car?

"*Mr. Schneff:* His mother's car.

"*The Court:* All right, except for that, is it all true as far as you are concerned?

"*Mr. Schneff:* Yes, sir.

"*The Court:* Is there any objection to my considering that testimony in determining whether I should accept your plea?

"*Mr. Schneff:* No, sir.

"*The Court:* Why are you pleading guilty to these offenses?

"*Mr. Schneff:* Because I feel that I was negligently guilty of it.

"*The Court:* Because you are guilty of the offenses?

"*Mr. Schneff:* Yes, sir."

On July 15, 1971, the court imposed sentence.

"*The Court:* I did consider the testimony taken at the preliminary examination in this matter at which the defendant was represented by counsel.[1] You know many parents, Mr. Schneff, would consider themselves extremely fortunate to have two children and about every parent I know—almost every one—real parent—put the care of the children ahead of everything else. They would do anything at all to make things easy for the children, provide them with the best of everything they can, certainly the best of medical care in this day and age. Raising children is a full time occupation, no time for other things that interfere with this full time occupation. As you chose otherwise, these two little children are now dead.

"I don't like what I have to do in this case, but I detest far more than that the circumstances that force me to impose the sentence I shall impose at this time. I am sure you would rather not be here. I am sure I would rather not be required to sentence you to this sentence.

"It is the sentence of this Court that you be imprisoned in the State Prison of Southern Michigan at

---

[1] A summary of the testimony taken at the preliminary examination may be found in the opinion below. *People v Schneff,* 43 Mich App 413; 204 NW2d 244 (1972).

Jackson, Michigan, for a period of not less than three and one half years."

Defendant then appealed his plea based conviction to the Court of Appeals. He urged the Court of Appeals to vacate his plea on the grounds that the trial court failed to comply with the requirements of MCLA 768.35; MSA 28.1058 and GCR 1963, 785.3. Specifically, defendant argued that the trial court did not adduce sufficient facts at the guilty plea hearing to support a conviction of the crime charged in the information.

The Court of Appeals, in an opinion authored by then Judge JOHN W. FITZGERALD, found reversible error in the trial court's partial reliance on testimony taken at the preliminary examination to establish the factual basis for defendant's guilty plea. *People v Schneff,* 43 Mich App 413; 204 NW2d 244 (1972). Defendant's plea was accordingly vacated and leave to appeal to this Court was granted to the people. 389 Mich 781 (1973).

In the present appeal we will first consider whether the Court of Appeals correctly held that testimony taken at the preliminary examination may not be used to provide any portion of the factual basis for a guilty plea. After that issue has been resolved we will examine whether there were sufficient facts advanced at defendant's guilty plea hearing to uphold his plea without reliance on any testimony from the preliminary examination.

I

Did the trial court err in considering the preliminary examination testimony to establish a portion of the factual basis for defendant's guilty plea?

The Court of Appeals in its consideration of this case felt bound to vacate defendant's guilty plea

under the authority of *People v Taylor,* 387 Mich
209; 195 NW2d 856 (1972). Central to the Court of
Appeals decision was the following paragraph:

"Whether or not a sufficient factual basis existed to
support the truth of the plea is a separate considera-
tion. MCLA 768.35; MSA 28.1058, requires that the
trial judge be satisfied that the defendant did indeed
commit the crime for which he is charged. Recently
decided *People v Taylor,* 387 Mich 209 (1972), specifi-
cally provided 'it is the court's duty to ascertain by its
examination facts which would convince the court that
indeed a crime had been committed by the defendant'.
Footnote 10 to that case further states:

" 'It is not sufficient that such facts appear on the
record of the preliminary examination. See, *People v
Zaleski,* 375 Mich 71, 81 [133 NW2d 175] (1965), and
*People v Rufus Williams,* 386 Mich 277, 284–285 [192
NW2d 466] (1971).' " *People v Schneff,* 43 Mich App 413,
419; 204 NW2d 244 (1972).

On appeal to this Court the people argue that a
"close reading of *Taylor* will show that it does not
stand for a flat proscription of the use of a Prelimi-
nary Examination Transcript." Rather, the people
read *Taylor* to prohibit only exclusive reliance on
a preliminary examination testimony to establish
a factual basis. The trial judge, according to the
people, may properly rely in part on the prelimi-
nary examination testimony, "but may not rely on
it in a vacuum without some further investiga-
tion."

Our analysis of this issue affirms the decision
reached by the Court of Appeals. *People v Taylor,*
*supra,* consistent with other decisions of this
Court, does bar the use of the preliminary exami-
nation transcript as a means of establishing the
factual basis of a guilty plea.

The first of the often cited holdings of this Court
examining guilty plea procedures is *People v Bar-*

*rows,* 358 Mich 267; 99 NW2d 347 (1959). In *Barrows* the Court found that a guilty plea could not be sustained without the presence of a factual basis provided by the defendant.

"It is plain, however, that in this case the mandatory provisions of Rule No. 35A [identical to MCLA 768.35; MSA 28.1058] were not complied with. The direct questioning of a defendant by the trial judge on plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty. This is a precaution against involuntary or induced false pleas of guilty, and against subsequent false claims of innocence." 358 Mich 267, 272.

*Barrows* was reaffirmed in a subsequent case that again examined the question of a factual basis for a guilty plea. *People v Carlisle,* 387 Mich 269; 195 NW2d 851 (1972). In *Carlisle* the Court stated:

"We reaffirm our holding in *Barrows.* No plea of guilty should be accepted by a trial judge until facts sufficient to establish the defendant's guilt have been set out in the record. Preferably, these facts should be brought forth through a direct examination of the accused by the trial judge at the time the plea of guilty is accepted." 387 Mich 269, 273.

The "preference" for ascertaining the factual basis for the plea directly from the defendant has, in effect, been a requirement in most situations. In exceptional situations, such as after a partial trial, this Court has affirmed guilty pleas where the defendant did not personally establish the factual basis for his plea. *People v Armstrong,* 390 Mich 693; 213 NW2d 190 (1973); *People v Kuchulan,* 390 Mich 701; 213 NW2d 95 (1973). No exception, however, has been recognized by this Court that

would allow for the use of a preliminary examination testimony. See, *People v Armstrong,* 390 Mich 693, 698; 213 NW2d 190 (1973).

The reason for this differing approach to preliminary examinations and trials is obvious. As Justice SOURIS stated in *People v Zaleski,* 375 Mich 71, 81–82; 133 NW2d 175 (1965):

"It seems to me that * * * with regard to the trial judge's quoted assertions that he had read the examination testimony and had no question in his mind concerning defendant's guilt, suggests to the bench and bar of this State that we approve such prior-to-trial determinations of guilt or innocence, based upon frequently one-sided preliminary examination testimony, as a factor to be considered in granting or denying a motion to withdraw a guilty plea. That is not permissible practice as I understand the law.

"The preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial; it 'is in no sense a trial to determine the guilt or innocence of an accused.' *People v. McLean* (1925), 230 Mich 423, 425, and cases cited therein. In its essential nature the preliminary examination is inquisitional and to function properly a very broad scope is permitted the people in their offer of proofs sufficient to satisfy the magistrate's inquisition as to probable cause. Not infrequently, defendant offers no proofs of his own and, indeed, may not even choose to cross-examine the witnesses offered by the people. On such testimony, no proper determination of guilty should be permitted for any purpose."

See also, *People v Williams,* 386 Mich 277, 284, fn 8; 192 NW2d 466 (1971).

It is our opinion that MCLA 768.35; MSA 28.1058 requires the trial court to derive the factual basis for a guilty plea directly from defendant or through testimony developed at a full adversar-

ial trial.[2] This procedure also provides the best method for assurance that a defendant understands the nature of the charge to which he is pleading. A complete recitation of facts from the defendant also provides for increased appellate certainty when reviewing challenged guilty pleas.

We find therefore that the trial judge erred in considering the preliminary examination testimony when accepting defendant's guilty plea.[3]

## II

Did the trial court adduce sufficient facts at defendant's guilty plea hearing to factually support his guilty plea?

When a defendant proffers a plea of guilty he expressly waives a trial on the merits and implicitly waives the obligation of the people to establish his guilt beyond a reasonable doubt. *Cf. People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972). In order then to insure that a defendant is pleading to an offense which he has, in fact, committed, statute and court rule place a duty on the trial court to establish a factual basis for the guilty plea. See Part I above. This factual basis must "satisfy" the court that defendant is guilty of the elements necessary to support a conviction on the charged offense. If the trial court is satisfied that defendant has committed the crime, it may accept

---

[2] GCR 1963, 785.7, effective after the plea here in issue, requires the trial court to obtain the factual basis of a plea through "personal interrogation of the defendant". GCR 1963, 785.7(3)(b).

[3] We note that defendant consented to the trial court's examination of the preliminary examination transcript. The result is not, however, changed by this consent. MCLA 768.35; MSA 28.1058 places the "duty" on the trial court to insure that the plea is freely and knowingly proffered by the defendant. The procedures required in the plea taking process should be strictly complied with and may not be waived by the defendant. *Cf. People v McMiller,* 389 Mich 425, 432–434; 208 NW2d 451 (1973).

his plea. If the facts do not satisfy the court of the truth of the plea " * * * it shall be [the court's] duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed." MCLA 768.35; MSA 28.1058.

Our review of the testimony taken at defendant's guilty plea hearing indicates that the trial court had before it sufficient facts to accept defendant's plea without any reliance on the preliminary examination.

The relevant parts of the statute prohibiting "cruelty to children", MCLA 750.136; MSA 28.331 are:

"Any parent or guardian or person under whose protection any child may be, who cruelly or unlawfully punishes, or wilfully, unlawfully or negligently deprives of necessary food, clothing or shelter, or who wilfully abandons a child under 16 years of age, or who habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person, * * * shall, upon conviction, be deemed guilty of a felony: * * * "

At the guilty plea hearing defendant Schneff stated that he was the father of the 27-day-old infants, that he kept them awake at card parties "[w]hich would endanger their health" and that he made insufficient efforts to care for one of the infants that was ill and not eating two days prior to its death.[4] On this record there were ample facts adduced to support a factual basis for the crime of "cruelty to children" as defined by statute.

Accordingly, on the basis of the testimony taken at defendant's guilty plea hearing we affirm the

---

[4] We do not consider herein the fact that defendant failed to provide necessary "medical attention." *See, People v Mankel,* 373 Mich 509; 129 NW2d 894 (1964).

acceptance of defendant's guilty plea. GCR 1963, 865.1(7).

## III

Defendant Schneff has asked this Court to exercise its supervisory power and reduce his minimum sentence under the authority of *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972) from three and one-half years to two years and eight months.

Recently in *People v Ginther,* 390 Mich 436, 446; 212 NW2d 922 (1973) we increased the number of appellants eligible for *Tanner* relief.

"In a large number of cases the Court of Appeals has applied the rule stated in *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202, 204–205 (1972), providing that the minimum term of an indeterminate sentence may not exceed two-thirds of the maximum term, 'to any case in which an appeal was pending on July 26, 1972, and the *Tanner* issue was briefed at any time during pendency of the appeal' *(People v Alvin Reed,* 43 Mich App 556, 558; 204 NW2d 319, 320 [1972]), including cases, as in *Reed,* where the 'defendant filed a supplemental brief' raising the *Tanner* issue. See, also, *People v Knopek,* 47 Mich App 530, 534; 209 NW2d 722, 725 (1973); *People v Montgomery,* 43 Mich App 205, 208–209; 204 NW2d 82 (1972). We accept that construction of *Tanner." Id.*

*Ginther* followed the lead of *People v Alvin Reed, supra* (decided on October 26, 1972) and modified the strict cut off date of *Tanner* in order to provide equality among similarly situated litigants. Since in the present case the Court of Appeals did not issue its decision until October 25, 1972, defendant had an ample opportunity to file a supplemental brief raising the *Tanner* issue. De-

fendant failed to do so and we therefore find him ineligible for the relief sought.

The Court of Appeals is affirmed in part and reversed in part. Defendant's conviction and sentence are reinstated.

T. M. KAVANAGH, C. J., and WILLIAMS, J., concurred with SWAINSON, J.

T. G. KAVANAGH, and M. S. COLEMAN, JJ., concurred in the result of the opinion by SWAINSON, J.

LEVIN, J. *(concurring in part and dissenting in part).* I concur in Part II of Mr. Justice SWAINSON's opinion. For the reasons expressed in *People v Bartlett,* 17 Mich App 205; 169 NW2d 337 (1969) I do not concur in Part I. For the reasons expressed in the first sentence of the last paragraph of *People v Montgomery* on original submission, 43 Mich App 205, 208; 204 NW2d 82 (1972) I do not concur in Part III and would extend *Tanner.*

J. W. FITZGERALD, J., did not sit in this case.